## CHARLES T. ISAACS *vs.* GEORGE H. MESSICK.

Sussex County, April Term, 1894.

**Sale. Execution. Fraud.**—Goods regularly and *bona fide* sold under execution at a constable's sale, although covered by a chattel mortgage, are sold free and discharged from the lien of the mortgage; but if such constable's sale be fraudulent, no title vests in the purchaser of goods thereat.

**Sale. Execution.**—An irregularity committed in good faith in the proceedings under an execution or sale, will not invalidate the title to any property bought thereunder by a *bona fide* purchaser.

**Fraud.**—Fraud vitiates every proceeding and transaction into which it enters, but, as all persons are presumed to be honest until the contrary is shown, fraud must always be established by proof and, in the absence of competent and satisfactory evidence thereof, can never lawfully be presumed.

**Verdict.**—Where a jury in reporting its verdict discloses the fact that the conclusion was reached by a calculation of interest contrary to the instruction of the Court the verdict will be set aside.

This was an action of replevin, which had been tried at the October term, 1892, and a verdict rendered for the plaintiff for the sum of $190.76. This verdict was set aside, because the jury in reporting the same disclosed the fact that they had arrived at their conclusions contrary to the instructions of the Court, having calculated interest on the amount of the chattel mortgage from its date, instead of calculating interest on the value of the goods proved from the date of their purchase by the plaintiff at his Sheriff's sale until the day the verdict was rendered, and the defendant was therefore let into a new trial at the April term, 1894. The facts of the case are sufficiently stated in the charge of the Court.

GRUBB, J. (charging the jury.)

This is an action of replevin brought to recover the value of certain specified articles of personal property belonging to the

plaintiff and detained by the defendant, as the plaintiff alleges. In this particular action the plaintiff can recover the value only of such articles named in the writ of replevin as he proves a lawful title to. He therefore has undertaken to prove to your satisfaction that on March 27, 1889, he obtained a chattel mortgage from Messick, the defendant, which, under the law of this State, thereupon became a lien on all the chattels mentioned in his writ of replevin, and that he subsequently, on October 24, 1891, purchased all of said chattels at the Sheriff's *levari facias* sale under his said chattel mortgage. But the defendant, Messick, contends that the plaintiff, Isaacs, could not and did not obtain a lawful title to said chattels by virtue of said Sheriff's sale on October 24, 1891, under the mortgage, because, as he has undertaken to prove to you, the said chattels had already been sold at a constable's sale on October 31, 1890, under an execution and levy made October 18, 1890, on a judgment for $99.74, recovered that same day before a Justice of the Peace by Stansbury J. Wheatly, who, from humane or charitable motives, left them in possession of said Messick, and consequently that the plaintiff, Isaacs, has no title to said chattels, and therefore no right to recover their value in this action of replevin.

The said plaintiff, Isaacs, however, in rebuttal of this claim of title under said constable's sale under Wheatly's judgment and execution, contends and seeks to satisfy you upon all the evidence before you that said Wheatly's execution and alleged sale were fraudulent, and that their purpose was to cover said Messick's goods and chattels so as to shield these from his other creditors, including the present plaintiff, Isaacs, and that therefore neither Wheatly nor Messick obtained by said constable's sale a lawful and valid title to any of said goods and chattels.

A preliminary question to be considered and determined by this Court, for your guidance, is whether the said constable's sale on October 31, 1890, in case it was a valid and not a fraudulent sale, could in legal contemplation have conveyed to the purchaser the goods and chattels sold thereat, free and discharged from the lien of said chattel mortgage given by Messick to Isaacs. For, if so, then

the sheriff's subsequent sale on October 24, 1891, under said chattel mortgage, could not have given to Isaacs, the plaintiff in this action of replevin, any title to the chattels covered by said mortgage or any right to recover their value in this suit now being tried by you.

But, as this question has heretofore been decided by this Court in the affirmative, it becomes our duty to instruct you that, in case you find that the said Constable's sale of said chattels to Wheatly was not fraudulent, but *bona fide*, then any chattels sold thereat, which were covered by the lien of Isaacs' said chattel mortagage, were purchased free and discharged from the lien of the chattel mortgage and could not subsequently be sold by the Sheriff or any other person under execution proceedings upon said chattel mortgage; and consequently the plaintiff, Isaacs, could not take title thereto by virtue of his Sheriff's sale thereof on October 24, 1891.

Isaacs had the right if present, as testified, at said Constable's sale, to protect his rights under his mortgage lien by bidding for the chattels and purchasing the same thereat, had he deemed it advisable to do so. And, whether he purchased them or not, the proceeds of said Constable's sale would, under the law, if the sale were not invalidated for fraud or other reason, be applied to the lien upon the chattels according to priority of the respective liens. In such case Isaacs's chattel mortgage lien being prior in order of time to Wheatly's judgment and levy, the proceeds of the Constable's sale would be applied to Isaacs' lien before any part thereof would go to Wheatly's judgment claim.

On the other hand, if you shall be clearly and thoroughly satisfied, from all the evidence before you, that Wheatly's execution proceedings and sale were fraudulently conducted by the Constable and with Wheatly's connivance or knowledge, then the sale would in law be fraudulent and void and could not convey or give to Wheatly a valid title to any of the property attempted to be sold thereat. In that case the said Constable's sale on October 31, 1890, would not have discharged the lien of Isaacs' chattel mortgage; nor have interfered with his right to sell the chattels covered

thereby at his subsequent Sheriff's sale on October 24, 1891, under his mortgage; nor have invalidated his title to the chattels purchased at his sale, as Messick, the defendant in this suit, contends it would have done.

This jury must, therefore, determine whether or not Wheatly's execution proceedings and sale were fraudulently conducted as I have just stated. For if you find this to be the fact, and also that the property named in this replevin writ was sold to the plaintiff, Isaacs, at his Sheriff's sale on October 24, 1891, under his chattel mortgage and a judgment and execution thereon, as claimed by him, then he would be entitled to recover the value of the property in this action.

In an action of replevin, the plaintiff who claims title as the purchaser at a constable's sale of the property in controversy, must show a judgment and execution under which the property was sold to him; but he is not bound to prove the regularity of the proceedings of the constable under the execution. These matters are to be objected to before the justice and cannot be controverted in a collateral proceeding. It is well settled that in such actions an irregularity, committed in good faith, in the proceedings under an execution or sale, will not invalidate the title to any property bought thereunder by a *bona fide* purchaser; and therefore proof of such an irregularity will afford no defence in a replevin suit. But if the irregularity in the proceedings under an execution or sale be fraudulently committed by the constable and with the connivance or knowledge of the execution creditor and purchaser at such sale, then the sale will be thereby vitiated and the purchaser will take no valid title to the goods attempted to be thus sold.

Whether or not there is fraud in any particular transaction is a mixed question of law and fact; which requires first that you shall be instructed as to what fraud is with respect to cases like the present, and next that you shall ascertain from all the evidence in the case before you, whether it is actually proven to exist.

To constitute a fraud on the part of a public officer, for instance, in the execution of legal process, it must be shown that he

designedly and wilfully acted with respect to the defendant, a creditor, or other interested person, in such a covenous, deceitful, misleading or dishonest manner as to deprive him of some right or benefit to which he was entitled, or subject him to some damage or injury. For example, it would be fraudulent in the officer wilfully and intentionally to mislead a defendant in the execution; or his creditors, as to the time when, or the place where he would sell the property levied upon and thereby prevent his attendance at the sale thereof, either by designedly delivering or posting false or erroneous notices of such sale, or by purposely tearing down and removing the notices of sale immediately after posting them as required by law; or by other fraudulent means which might be specified as illustrations.

If such acts were done by the officer with the connivance or knowledge of the plaintiff in the execution, it would be fraudulent in both of them and the sale thereunder would be utterly void and of no effect, and the plaintiff would not be allowed to derive any benefit from it in the judicial proceedings wherein it was questioned. So also if a purchaser at such a sale conspired with the officer to commit the fraud, he would not be allowed to retain any property bought by him at such fraudulent sale.

Fraud vitiates every proceeding and transaction into which it enters, but as all persons are presumed to be honest until the contrary is shown, fraud must always be established by proof, and in the absence of competent and satisfactory evidence thereof can never lawfully be presumed. It may, however, be established either by direct testimony, such as the positive declaration or admission of the guilty party, or by circumstantial evidence,—that is, by proof of the acts, conduct and other circumstances attending the particular transaction, from which an intelligent and impartial jury may reasonably and justly infer or presume fraud. In the absence of other circumstances showing or tending to show fraud, the fact that a purchaser at a constable's or Sheriff's sale bought the chattels sold thereat for much less than their value, and allowed them to remain in the possession of the defendant, would not alone furnish suffi-

cient circumstantial or presumptive evidence to maintain the allegation of fraud presented in the case, for the provisions of our statute of frauds which render void the sale of goods, whether by bill of sale or otherwise, without an actual delivery to the purchaser, do not apply to a constable or other judicial sale of goods under execution process, since the publicity thereof avoids the danger of fraud which the statute provides against.

"But it does not follow that every public sale, with or without delivery, is good. The question of fraud or bad faith is always open; fraud vitiates every sale. If the purpose of selling property be to cover it merely, so as to shield it from creditors, that purpose, though it might be prompted even by benevolent motives, is an illegal purpose and cannot be carried out by the aid of courts of justice;" *Pennington vs. Chandler*, 5 Harring. 395.

If therefore the jury shall be entirely satisfied, after careful consideration of all the evidence on both sides, that the proceedings under Wheatly's execution and sale were not *bona fide*, but that they were fraudulently conducted, with the knowledge and concurrence of Wheatly, to cover the property of George H. Messick so as to shield it from Charles T. Isaacs, the plaintiff in this suit, or any other of said Messick's creditors, then the said Wheatly did not by his attempted purchase at said sale acquire a legal title to the property as against Isaacs or any other creditor of Messick, and therefore Isaacs is entitled, if you find for him as heretofore explained, to a verdict for the full value of the property of Messick purchased by Isaacs at the Sheriff's sale, under his chattel mortgage, on October 24, 1891.

The value of the chattels in question, they having been detained by the defendant and not recovered by the plaintiff in this action, must be ascertained and determined by the jury from the evidence before them on this point, and if your verdict should be for the plaintiff, he will be entitled to recover whatever you shall find to be the value of the property at the time it was sold to Isaacs, the plaintiff, at the sale under his chattel mortgage, and held and detained from him by the defendant, Messick

viz., on October 24, 1891, and you may allow him interest thereon from said time if you deem it proper to do so.

But if you shall, on the contrary, find that the constable's sale to Wheatly was *bona fide* and not fraudulent, then you should render a verdict in favor of the defendant for costs.

*Verdict for the plaintiff for $190.76.*

*R. C. White,* for plaintiff.

*Charles W. Cullen,* for defendant.